FILED
2018 Oct-01  PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| ALICE WESTBROOK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 3:17-cv-00534-HNJ |
| | ) |
| NASA FEDERAL CREDIT UNION; | ) |
| TWENTY 4 SEVEN RECOVERY, | ) |
| INC., | ) |
| | ) |
|     Defendant. | |

### DEFENDANT TWENTY 4 SEVEN RECOVERY, INC'S
### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Twenty 4 Seven Recovery, Inc. ("Defendant") moves this Court for summary judgment on the only remaining claim asserted by Plaintiff Alice Westbrook ("Plaintiff").  In support of this motion, Defendant states as follows:

### INTRODUCTION

Plaintiff's claim arises from the repossession of her late husband's 2016 Dodge Charger on the evening of January 30, 2017. One claim remains from the Complaint against Defendant under the Fair Debt Collection Practices Act

("FDCPA").[1]  Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692f(6) – prohibiting a debt collector from dispossessing property without a present right to possession – in repossessing Plaintiff's late husband's vehicle.

There is no evidence to support this allegation because Plaintiff cannot establish Defendant dispossessed the vehicle, which secured a defaulted loan, without a present right to possession.

STATEMENT OF UNDISPUTED FACTS

Plaintiff's late husband, Perry Westbrook, owned a 2016 Dodge Charger (the "vehicle") financed through NASA Federal Credit Union ("NASA").[2] NASA was the lienholder on the vehicle.[3]  On December 10, 2016, Mr. Westbrook died.[4] On January 11, 2017, NASA received a letter from Plaintiff containing January's payment for the vehicle as well as notification that Mr. Westbrook had passed away.[5] In the same correspondence, Plaintiff informed NASA that she would be unable to make future payments on the loan.[6]  Plaintiff agreed to send NASA the requested death certificate for Mr. Westbrook when it was finalized.[7] Since Mr. Westbrook was the only individual listed on the loan, upon notification of his death

---

[1] On May 3, 2018, this Court entered an Order granting Defendant's motion to dismiss for all but Plaintiff's FDCPA claim.

[2] *See* Complaint ¶ 5.

[3] *See* Compl. ¶ 6.

[4] *See* Compl. ¶ 7.

[5] *See* Exhibit 1, Affidavit of Robert Kiel; see also, Exhibit 2, Deposition of Alice Westbrook, p. 22, 22 – p. 23, 1.

[6] *See* Ex. 1; see also Pltf's Depo p. 22, 18 – p. 23, 6.

[7] *See* Compl. ¶ 9.

the account went into default and NASA contracted with PAR North America ("PAR"), a "forwarding company", to collect the vehicle as collateral for the loan.[8] On January 30, 2017, PAR North America issued the repossession order accepted by Defendant.[9]

In accordance with the repossession order, Defendant's employee, Mike Sproles, repossessed the vehicle using a Vulcan Intruder 812 – which can, within a couple of seconds, attach to and lift the wheels of a vehicle so that it can be quickly pulled away.[10] The evening of January 30, 2017, Mr. Sproles backed his tow truck up to the vehicle, which was parked beneath an open carport at Plaintiff's residence, and from inside the cab of the tow truck, hooked up the vehicle by attached to and lifting its rear wheels off the ground.[11]

Plaintiff's son, Scott Westbrook, was inside the residence watching television when he noticed the lights on the tow truck as it was backing up.[12] He told Plaintiff that someone had pulled into the driveway.[13] Outside, Mr. Sproles exited his truck and, at 10:14pm, checked the VIN number on the front window of the subject vehicle, and made sure he had enough room to get the vehicle out of the

---

[8] *See* Ex. 1; *see also* Exhibit 3, Deposition of Nick Keeton p. 15, 9-14 (stating that Defendant contracted with PAR, not NASA); Exhibit 4, Independent Contractor Agreement between Defendant and PAR North America.
[9] *See* Exhibit 5, Repossession Order from PAR North America; *see also* Keeton Dep. p. 17, 6 – p. 18, 16.
[10] *See* Exhibit 6, Deposition of Mike Sproles p. 18, 12-15, p. 47, 19-22.
[11] *See* Sproles Dep. p. 19, 20 – p. 20, 22, p. 21, 7-12.
[12] *See* Exhibit 7, Deposition of Scott Westbrook p. 13, 14-18.
[13] *See* Pltf Dep. p. 29, 1-5.

carport.[14] Also at 10:14pm, Plaintiff called 911 because she did not know who was taking the subject vehicle.[15] Mr. Westbrook then came outside, saw Mr. Sproles standing on the other side of the vehicle, and asked Mr. Sproles what was going on.[16] Mr. Sproles replied that the vehicle was being repossessed.[17]

Plaintiff then came outside and told Mr. Sproles that she had called the police.[18] This call lasted six minutes and twenty seconds and the individuals can be heard in the background.[19] Mr. Westbrook instructed Mr. Sproles that he was not to leave until the police arrived.[20] Mr. Sproles complied with the request and as they waited for the police to arrive, Plaintiff and Mr. Westbrook told Mr. Sproles that the subject vehicle was not behind on its payments and that they did not understand why it was being repossessed.[21] The first call to 911 ended at 10:20pm.[22] Plaintiff then called 911 back at 10:20pm to ask when an officer would arrive.[23]

At 10:21pm, Officer Phillips, of the Dora Police Department, arrived in response to Plaintiff's call.[24] Officer Phillips wore a body camera which recorded

---

[14] *See* Exhibit 8, RDN Printout, p. 3 (showing the agent entry at 10:14pm); *see also* Pltf Dep. p. 34, 5-14 (stating that she called the police once she saw the repossession agent exit the tow truck); Sproles Dep. p. 20, 20-22 (stating that he "VIN'd the vehicle" after he "picked it up.").

[15] *See* Exhibit 9, Walker County 911 Call Audio (1 of 2); *see also* Exhibit 10, Walker County 911 Call Log; Pltf Dep. p. 34, 11-14.

[16] *See* Westbrook Dep. p. 15, 10-16.

[17] *See* Westbrook Dep. p. 15, 17-19.

[18] *See* Westbrook Dep. p. 17, 13-19.

[19] *See* Ex. 9.

[20] *See* Westbrook Dep. p. 25, 13-15.

[21] *See* Pltf Dep. p. 29, 14-18.

[22] *See* Ex. 9 (the call was initiated at 10:14 and lasts six minutes and twenty seconds).

[23] Pltf Dep. p. 30, 4-7; *see also* Exhibit 11, Walker County 911 Call Audio (2 of 2).

[24] *See* Exhibit 12 Dora Police Department Dispatch Record; *see also* Pltf Dep. p. 30, 8-11.

his interactions with Plaintiff, Mr. Westbrook, and Mr. Sproles.[25] After assessing the situation, Officer Phillips informed Plaintiff that he could not tell Mr. Sproles to drop the car since the vehicle was already hooked up and in Mr. Sproles' possession.[26] Officer Phillips suggested that Plaintiff contact her lender to find out why the vehicle was being repossessed.[27] Ultimately, Plaintiff decided to let Mr. Sproles take the vehicle and to call NASA the following morning.[28]

Plaintiff admits that Mr. Sproles did not curse, touch, or threaten her or her son.[29] Plaintiff further admits:

> Q: So when you went to go get your items out of the vehicle the repossession agent didn't stop you from doing that; right?
> A: No, no.
> Q: So he was just there to repossess the vehicle, is that correct?
> A: Right.
> Q: . . . So you understand that he was just there to do his job; right –
> A: Right.
> . . .
> Q: And he wasn't there to cause you any harm; right?
> A: Right
> Q: And he was still professional, even if you thought that he was being a little smart –
> A: Yeah.[30]

The following day, Plaintiff contacted Defendant's owner, Nick Keeton, and again reiterated that "Mike was very professional." Plaintiff's only complaint was

---

[25] *See* Exhibit 13, Dora Police Department Body Cam Footage
[26] *Id.*
[27] *See* Ex. 13.
[28] *Id.*; *see also* Exhibit 14, Plaintiff's January 31, 2017 call to NASA; Sproles Dep. p. 29, 19-20 ("Ms. Westbrook gave me permission to take the car.").
[29] Pltf Dep. p. 39, 12 – p. 40, 9.
[30] Pltf Dep. p. 39, 7 – p. 41, 4.

that she did not understand why the vehicle was being repossessed after she had made a payment.[31]

### STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when, viewing the evidence in light most favorable to the nonmovant, the Court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Where, as here, the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see also *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

---

[31] Pltf Dep. p. 42, 4-7; *see also* Ex. 13; Ex. 14.

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *See Id*. "A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise as provided by the rule, must set forth specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id. (citing Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)).

However, the mere existence of some evidence in support of the non-movant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249.

Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. *Id*.

ARGUMENT

Plaintiff's only remaining cause of action against Defendant is one for violation of 15 U.S.C. § 1692(f)(6).   The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Defendant is a "debt collector" under the FDCPA only as an exception provided for in section 1692f(6). See 15 U.S.C. § 1692a(6) (including, for the exclusive purpose of section 1692f(6), enforcers of security interests within the definition of "debt collector").

However, for the reasons outlined below, Defendant is entitled to summary judgment on Plaintiff's remaining claim.

## I.   <u>Defendant Did Not Dispossess Plaintiff of Her Property</u>

Under the FDCPA, a debt collector may not take or threaten to take "any nonjudicial action **<u>to affect dispossession or disablement of property</u>** if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692(f)(6) (emphasis added). Defendant did not take nor threaten to take any action to *dispossess*s Plaintiff of property as required by § 1692(f)(6). Plaintiff did not have any right to possession of the subject vehicle to claim dispossession. *See Eke v. FirstBank Fla.*, 779 F.

8

Supp. 2d 1354, 1360 (S.D. Fla. 2011) (holding that the plaintiff failed to state a claim under section 1692f(6) where he did not, and could not, allege that he had an interest in the property dispossessed). Plaintiff admits that she was not listed on the subject vehicle's note.[32] Plaintiff alleges no facts to support a claim of any possessory interest. In fact, Plaintiff's husband, who was the only person with a right of possession at any time other than NASA, died almost two months before the repossession. Therefore, Defendant could not have violated 15 U.S.C. § 1692(f)(6) as a matter of law.

## II.    **Even if Plaintiff Had a Possessory Interest in the Vehicle, Defendant Is Not Liable Under § 1692f(6)**

### A.    *Defendant Had a Present Right of Possession and Therefore is Not Subject to § 1692f(6)*

In conjunction with the FDCPA's legislative history, the language within the statute demonstrates why Congress intentionally drew a distinction between a "debt collector" and an enforcer of a security interest. Section 1692f(6) prohibits the:

> *Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—*
> *(a) there is no present right to possession of the property claimed as collateral through an enforceable security interest . . .*

15 U.S.C. § 1692f(6)(a). Congress "sought to proscribe the conduct of repossession agencies which have 'no present right to the possession of the property claimed'."

---

[32] Pltf Dep. p. 22, 12-14.

*Jordan v. Kent Recovery Servs., Inc*., 731 F. Supp. 652, 657 (D. Del. 1990). "Conversely, Congress apparently sought to leave unregulated those who enforce security interests when a 'present right' to the collateral exists . . . ." *Id.* Specifically, "section 1692f(6) addresses entities that attempt to enforce security interests but who lack the right to enforce as against the secured property because the right has not matured. In other words, this section is intended to protect an individual with an interest in a secured property . . . from dispossession by a debt collector when the debt collector has no right to possess the property." *Eke*, 779 F. Supp. 2d at 1360.

Therefore, where a defendant has a present right to possession of the property, it is not subject to §1692f(6) and any such claim fails. *See Fenello v. Bank of Am.*, N.A., 926 F. Supp. 2d 1342, 1351 (N.D. Ga. 2013), *aff'd sub nom. Fenello v. Bank of Am., NA*, 577 F. App'x 899 (11th Cir. 2014) (granting the defendants' motion to dismiss for plaintiffs failure to allege any facts supporting the claim that the defendants did not have a present right to possession where the property was claimed as collateral through an enforceable security interest and was in default); *Hayes v. Find Track Locate, Inc*., 60 F. Supp. 3d 1144, 1155 (D. Kan. 2014) (granting summary judgment where the defendant had a present right to possession because the plaintiff had defaulted on his finance agreement); *Thepvongsa v. Reg'l Tr. Servs. Corp*., 972 F. Supp. 2d 1221, 1230 (W.D. Wash.

2013) (finding that no genuine issue of fact existed where the holder of the promissory note authorized the defendant to act on its behalf thereby permitting the defendant the right to effect dispossession of plaintiff's property); *Seibel v. Soc'y Lease, Inc.*, 969 F. Supp. 713, 717 (M.D. Fla. 1997) (holding that section 1692f(6) only applies if the defendant did not have a present right to possession of the property).

Here, Defendant indisputably had a present right to possession of the vehicle under the terms of the loan agreement. The loan agreement gave NASA a security interest in the subject vehicle upon default.[33] Per the terms of the loan agreement, upon notification of Plaintiff's husband's death and Plaintiff's inability to continue making payments, the vehicle was placed into default.[34] Plaintiff does not, and cannot, dispute that NASA had a present right to possession. NASA thus contracted with PAR, who subsequently contracted with Defendant, to repossess the vehicle.

Therefore, a present right to possession existed for the repossession and Plaintiff's claim fails.

   B.   *Defendant Had the Right to Rely on its Client's Representations and Therefore is Not Liable Under § 1692f(6)*

Even if the vehicle was not in default, Defendant was under no duty to independently investigate the validity of its client's possessory right because

---

[33] *See* Ex. 1.
[34] *Id.*

11

Defendant was "entitled to rely on the information [it] receive[d]" from PAR.
*See In re Cooper*, 253 B.R. 286, 292 (Bankr. N.D. Fla. 2000) (citing *Smith v.
Transworld Systems, Inc*., 953 F.2d 1025, 1032 (6th Cir. 1992)); *Jenkins v.
Heintz,* 124 F.3d 834 (7th Cir. 1997) (holding that no duty exists under the FDCPA
for a debt collector to independently investigate validity of debts); *Amond v.
Brincefield, Hartnett & Associates, P.C.*, 175 F.3d 1013 (4th Cir. 1999) (refusing
to create a duty for debt collectors to investigate validity of debts under the
FDCPA); *Jenkins v. Union Corp*., 999 F.Supp. 1120, 1140-41 (N.D. Ill. 1998)
(holding that a debt collector has no obligation to conduct an independent debt
validity investigation); *Elane v. Revenue Maximization Group*, 233 F.Supp.2d 496,
500 (E.D.N.Y.2002) (noting that defendant was entitled to rely on its client's
representation that the debt was valid); *Ducrest v. Alco Collections, Inc*.
931 F.Supp. 459, 462 (M.D. La. 1996) ("A [repossession company] should be able
to rely on the representation and implied warranty from [its client]" that its client
has a present right to possess the collateral).

Moreover, any purported lack of present possessory interest on behalf of
Defendant as a result of inaccurate information provided by its client would be a
bona fide error as defined under 15 U.S.C. § 1692k(c). *See Smith*, 953 F.2d at 1032
(holding that the "bona fide error" defense within the FDCPA absolved the debt
collector of liability where the debt referral form included "specific instructions to

claim only amounts legally due and owing."). Here, the contract between Defendant and PAR specifically states that PAR "warrants that at the time of any assignment to recover Property on behalf of any Customer, Customer shall have the lawful right to immediate possession of the Property."[35]

Therefore, even if Defendant lacked a present right of possession – which it did not – Defendant is not liable under the FDCPA for a bona fide error and Plaintiff's claim fails.

## III.   Defendant Did Not Lose Its Present Right to Possession Under the FDCPA

In her Complaint, Plaintiff alleges that Defendant "took non-judicial action to effect dispossession of the Vehicle without a present right to possession in violation of 15 U.S.C. § 1692f(6)."[36] As outlined above, Plaintiff cannot offer any evidence to support her position.

However, to the extent Plaintiff now attempts to claim Defendant did not have a "present right to possession" because Defendant "breached the peace" under Alabama law – a secured party does not lose its present right of possession, under the FDCPA, if the peace is breached. *See James v. Ford Motor Credit Co*., 842 F.Supp. 1202, 1209 (D.Minn.1994) (holding that the defendant did not lose present right to possession despite the plaintiffs allegations of breach of the peace); *Siwka*

---

[35] *See* Exh. 4, p. 4 (further stating that PAR agrees to "indemnify and hold harmless" Defendant against any claims of lack of right to possession).
[36] *See* Compl. ¶ 49.

v. *Smart Recovery Serv., LLC*, No. 08-CV-12152, 2010 WL 3719897, at *9 (E.D.

Mich. Aug. 25, 2010), *report and recommendation adopted sub nom. Siwka v.*

*Smart Recovery Serv., LLC*., No. 08-12152, 2010 WL 3732080 (E.D. Mich. Sept.

17, 2010) (granting summary judgment on the plaintiffs' § 1692f(6) claim where

the defendant had a present right to possession of the vehicle despite "genuine

issues of material fact as to whether a breach of peace occurred during the vehicle

repossession"); *Osborne v. Minnesota Recovery Bureau, Inc*., No. 04-

1167(JRT/FLN), 2006 WL 1314420, at *7 (D. Minn. May 12, 2006) (granting

summary judgment on the plaintiff's §1692f(6) claim and holding that "breach of

the peace does not necessarily suspend a repossession company's present right to

possession"); *Akerlund v. TCF Nat'l Bank of Minnesota*, No. CIV. 99-1537

MJD/JGL, 2001 WL 1631440, at *6 (D. Minn. June 11, 2001) ("A breach of peace

may limit the manner in which repossession may be effected, but does not abrogate

the right to present possession.").

        As outlined by the Delaware district court in Jordan, the legislative intent of

§1692f(6) highlights why a breach of the peace would not affect a secured party's

present right to possession under the FDCPA:

> The legislative history of the FDCPA thus indicates that the FDCPA was
> enacted in order to prevent the "suffering and anguish" which occur when a
> debt collector attempts to collect money which the debtor, through no fault of
> his own, does not have. In contrast to a debt collector, an enforcer of a
> security interest with a "present right" to a piece of secured property attempts
> to retrieve something which another person possesses but which the holder of

the security interest still owns. Unlike the debtor who lacks the money sought, the possessor of secured property still has control of the property . . . Accordingly, the evil sought to be regulated by the FDCPA, i.e., harassing attempts to collect money which the debtor does not have due to misfortune, is not implicated by the actions of an enforcer of a security interest with a "present right" to the secured property. Thus the legislative history confirms that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA for all purposes except for the prohibitions described in § 1692f(6).

*Jordan v. Kent Recovery Servs., Inc.*, 731 F. Supp. 652, 658 (D. Del. 1990). Here, the only potentially applicable prohibition within § 1692f(6) is subsection (a),[37] and, as stated above, it is undisputed that Defendant had a present right to possession.[38] Therefore, Defendant falls outside the prohibitions of § 1692f(6) and is entitled to judgment as a matter of law on Plaintiff's claim.

## IV.   Plaintiff Cannot Use the FDCPA as an Enforcement Mechanism for State Law

To the extent Plaintiff attempts to rely on Alabama law to make a claim for breach of the peace – her claim still fails. This Court, in its Order dated May 3, 2018, stated that "[a] wrongful repossession or a breach of the peace injures the debtor" (emphasis added) and thus found that Plaintiff did not have standing under Ala. Code § 7-9A-625(c) to bring a claim under the same article. Therefore, this Court has already held that Plaintiff lacks standing to bring a claim against

---

[37] Plaintiff does not allege, nor does any authority support the contention: (b) a lack of present intention; or (c) exemption by law.

[38] Additionally, even if a breach of the peace could suspend Defendant's possessory interest under the FDCPA, Plaintiff cannot allege any facts to establish a breach of the peace occurred – the 911 call audio and body cam footage captures the sixteen minute interaction between the parties and is demonstrably not a breach of the peace. *See* Exs. 9, 11, and 13.

Defendant under Ala. Code 7-9a-609. Plaintiff cannot avoid her lack of standing by relying upon the FDCPA as an enforcement mechanism to impose liability under the same state statute. *See Bentrud v. Bowman, Heintz, Boscia & Vician*, P.C., 794 F.3d 871, 875 (7th Cir. 2015) (denying the plaintiff's § 1692f claim and refusing to "transform the FDCPA into an enforcement mechanism for matters governed by state law."); see also *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007) (denying the plaintiffs' FDCPA claims because "the federal and state laws implicated provided remedies for violations.").

Here too, Plaintiff's attempt to utilize the FDPCA to avoid her lack of standing under Alabama law should be prohibited and Defendant's motion for summary judgment is due to be granted.

## CONCLUSION

The undisputed facts render Plaintiff's claim against Defendant deficient as a matter of law.  The FDCPA is intended to prevent debt collectors from engaging in harassing and abusive behaviors as well as to prevent enforcers of security interests from dispossessing individuals of their property without a present right to possession. In instances where the enforcer of the security interest has a present right to possession, as here, the FDCPA does not apply. Accordingly, for the foregoing reasons, Defendant requests that this Court enter summary judgment in its favor for Plaintiff's remaining claim.

Dated: October 1st, 2018.

/s/ Rachelle E. Sanchez
One of the Attorneys for Defendant
Twenty 4 Seven Recovery, Inc.

OF COUNSEL:
Sanford Hooper
shooper@lightfootlaw.com
Rachelle E. Sanchez
rsanchez@lightfootlaw.com
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203-3200
(205) 581-0700

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all counsel of

record through the Court's electronic filing system this 1st day of October, 2018:

> Whitney Seals
> Pate & Cochrun, LLP
> PO Box 10448
> Birmingham, AL 35202
> Telephone: (205) 323-3900
> Fax: (205) 323-3906
> whitney@plc-law.com
> Attorney for Plaintiff
>
> John Hubbard
> John Hubbard, LLC
> PO Box 953
> Birmingham, AL 35201
> Telephone: (205) 378-8121
> jch@jchubbardlaw.com
> Attorney for Plaintiff

*/s/ Rachelle E. Sanchez*
Of Counsel