UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| ALICE WESTBROOK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) **Civil Action Number** <br> NASA FEDERAL CREDIT UNION, ) **3:17-cv-00534-AKK** <br> ET AL., ) <br> ) <br> Defendants. ) <br> ) | |

## **MEMORANDUM OPINION**

Alice Westbrook filed this lawsuit against NASA Federal Credit Union ("NASA FCU") and Twenty 4 Seven Recovery Inc. ("T4SR") alleging a claim under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), and various Alabama tort claims. Doc. 13. The court dismissed all claims against NASA FCU, doc. 27, and the tort claims against T4SR, doc. 34. T4SR has now moved for summary judgment on Westbrook's remaining FDCPA claim. Doc. 37. The motion, which is fully briefed and ripe for review, docs. 37-39, 46, 47, is due to be granted.

### **I. LEGAL STANDARD FOR SUMMARY JUDGMENT**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any

1

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's

favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND

The following facts reflect an assessment of the record in the light most favorable to Westbrook. Westbrook's late husband, Perry Westbrook, entered into a retail installment contract to purchase and finance a 2016 Dodge Charger. Doc. 39-1 at 2. The loan agreement was assigned to NASA FCU and Perry Westbrook was the only borrower on the loan. *Id.* Roughly five weeks after the unfortunate death of Perry Westbrook, Westbrook made the January 2017 payment for the automobile and informed NASA FCU of her husband's death and her inability to make future payments on the loan. *Id.* at 3. *See also* doc. 39-2 at 7 (Westbrook's testimony that she sent a letter to NASA FCU indicating that she was "not able to continue to make the car payments because of [her] Social Security"). This notice triggered an automatic default on the loan, which had a remaining balance of

$47,010.10. Docs. 39-1 at 3; 39-4; 39-5. Moreover, the loan agreement gave NASA FCU a security interest in the automobile in the event of a default. Doc. 39-2 at 2. Consequently, on January 30, 2017, NASA FCU contracted with PAR North American ("PAR") to collect the automobile "for application against the outstanding loan balance," and PAR in turn issued an "Order to Repossess" the automobile to T4SR. Doc. 39-5.

Later that evening, Mike Sproles, an employee of T4SR, arrived at Westbrook's residence to repossess the automobile located in an open carport. Doc. 39-6. Although the parties dispute at what point the Westbrooks approached Sproles as he attached the automobile to his tow truck, doc. 39-3 at 6, the parties agree that Westbrook's son, Scott Westbrook, came outside to confront Sproles. Docs. 39-6 at 9; 39-7 at 4-5. Shortly after, Westbrook exited her house while on the phone with the police about a "repo man" who was repossessing her car even though the loan was purportedly not in default. Doc. 39-12 at 1-2. During the encounter, the Westbrooks agree that they engaged in a "heated conversation" with Sproles and that Sproles was not physically threatening, violent, or blocking their access to the car. Docs. 39-2 at 11; 39-6 at 7-8; 39-7 at 8-9.

After Dora Police Officer R. McConico arrived, he explained to the Westbrooks that he was unable to stop the repossession because the car at that point was attached to the tow truck. Docs. 39-12 at 2-3; 39-13. At the request of

Officer McConico, Sproles provided T4SR's contact information to the Westbrooks. Doc. 39-13. A few days later, one of T4SR's owners, Nick Keeton, followed up with Westbrook to return the automobile's tag and mentioned that she could file an incident report with T4SR about the repossession. Doc. 39-3 at 11. Westbrook filed this action instead.

### III. ANALYSIS

The sole issue before the court is whether T4SR violated the FDCPA, which prohibits debt collectors "from making false or misleading representations and from engaging in abusive and unfair practices in connection with the collection of any debt." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1302 (11th Cir. 2015) (citing 15 U.S.C. §§ 1692d–1692f). Specifically, repossession companies, which act in "the enforcement of security interests of [debt collectors or creditors]," *Seibel v. Soc'y Lease, Inc.,* 969 F. Supp. 713, 717 (M.D. Fla. 1997), are prohibited from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f(6)(A). The relevant provision in contention here is the one related to "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest . . . " *Id.*

To support its contention that it had a present right of possession, T4SR cites to the unrebutted sworn affidavit of Robert Kiel, Vice President of Loan Servicing for NASA FCU, who attested that T4SR had a present right to possess the automobile because (1) Perry Westbrook was the only person listed as a borrower; (2) Westbrook informed NASA FCU of her husband's death and inability to make future payments; (3) Westbrook's notification triggered an automatic default under the loan agreement; and (4) NASA contracted with PAR North America, who then contracted with T4SR to repossess the automobile. Docs. 39-1 at 2-3; 39-4 at 2. Indeed, Westbrook does not dispute that T4SR had a present right to possession over the automobile based on a defaulted loan. Doc. 46 at 18, 22. She argues instead T4SR's breach of the peace during the repossession affected T4SR's ability to maintain its present right of possession and avoid liability under § 1692f(6)(A). The court turns next to the parties' respective arguments on this point, as well as T4SR's various contentions in support of its motion.[1]

---

[1] Basically, TS4R's motion is based on three premises: (1) that Westbrook never had a present right to possession over the automobile; (2) that § 1692f(6)(A) does not apply because T4SR always maintained a present right of possession; and (3) that no breach of the peace occurred to affect its present right of possession. Doc. 38. The first point regarding Westbrook's present right of possession, doc. 38 at 8-9, is unavailing. TS4R's reliance on *Eke v. FirstBank Fla.*, 779 F. Supp. 2d 1354, 1360 (S.D. Fla. 2011), which found § 1692f(6)(A) inapplicable when a lessee tried to "piggyback" onto his landlord's security interest with a bank, is misplaced because the lessee failed to identify or plead that his "rent payments somehow gave him an interest in the property." Additionally, after Westbrook notified NASA FCU of her husband's death, NASA FCU explained the process through which she could keep the vehicle depending on her husband's estate and her ability to make loan payments. Doc. 39-14. Moreover, as the court found earlier, "[t]he court is bound by the Eleventh Circuit's pronouncement that . . . broad language coupled with its illustrative examples of violative conduct support the conclusion that §

### A. <u>Whether a Breach of the Peace Invalidates a Present Right of Possession</u>

T4SR argues that its "present right to possession" insulates it from any liability under § 1692f(6)(A). In support of this contention, T4SR cites to a string of cases[2] in which courts have dismissed § 1692f(6)(A) claims when the plaintiff failed to plead *any* facts that the "enforcer of a security interest does not have a present right to the collateral at issue." *Wright v. Santander Consumer USA, Inc.,* 2018 WL 2095171, at *4 (M.D. Fla. May 1, 2018) (citation omitted). These cases are not dispositive however on the issue before this court. In that respect, although the Eleventh Circuit has not ruled on whether a breach of the peace can invalidate a repossession agency's present right to possession and the viability of a § 1692f(6)(A) claim, at least two district courts in this circuit have addressed this precise issue and analyzed the state's self-help repossession statute to determine if

---

1692f applies whether the unfair and unconscionable means are employed against *consumers or non-consumers*." *See* doc. 34 at 5-6. (emphasis added). Finally, the plain meaning of § 1692f(6)(A) dictates that the court considers whether the debt collector or recovery agency — in this case T4SR and not Westbrook — has the present right of possession.

[2] The Eleventh Circuit opinion T4SR references is inapplicable because the plaintiff in that case never challenged the creditor's right of possession or argued a breach of the peace. *See Fenello v. Bank of Am., N.A.,* 926 F. Supp. 2d 1342, 1351 (N.D. Ga. 2013), *aff'd sub nom. Fenello v. Bank of Am., NA,* 577 F. App'x 899 (11th Cir. 2014) ("Plaintiffs fail to allege any facts to support that [defendant] does not have a present right to possession of the Property."). Similarly, the other two cases T4SR cites are inapposite because the plaintiffs did not allege that the creditors or repossessing agent breached the peace. *See Thepvongsa v. Reg'l Tr. Servs. Corp.,* 972 F. Supp. 2d 1221, 1230 (W.D. Wash. 2013) (dismissing plaintiff's § 1692f(6)(A) claim against successor trustee who sent notices of a trustee's sale but ultimately took no additional steps to foreclose on the property); *Seibel,* 969 F. Supp. at 717 (dismissing plaintiff's § 1692f(6)(A) claim against a repossession agency that took possession of the vehicle without any incident from plaintiff who was unaware of the repossession).

the creditor lost its present right to possession. *See Yeldell v. Wells Fargo Bank, N.A.*, 2011 WL 13287064, at *3 (N.D. Ala. Mar. 2, 2011) (finding that a factual dispute remained as to whether a breach of the peace occurred and deprived the creditor of its right to repossess the vehicle) and *Wright*, 2018 WL 2095171, at *4 (applying Florida's self-help repossession statute, which permits an agency to repossess collateral "if it proceeds without breach of the peace," when analyzing a § 1692f(6)(A) claim). The court will follow the lead of these cases and will analyze under Alabama law whether a breach of the peace occurred during the repossession.[3]

---

[3] Indeed, this seems to be the majority approach. *See, e.g., Speleos v. BAC Home Loans Servicing, L.P.*, 824 F. Supp. 2d 226 (D. Mass. 2011) ("A court should look to state law requirements to determine whether there was a present right to possession under the Fair Debt Collection Practices Act (FDCPA) section applicable to the enforcement of security interests . . . . [under] 15 U.S.C.A. § 1692f(6)."); *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216 (D. Conn. 2014) ("Genuine issue of material fact existed as to whether repossession company breached the peace in repossessing car, and thus whether repossession company had right under Connecticut law to take possession of car without judicial process, precluding summary judgment on car owner's Fair Debt Collection Practices Act (FDCPA) claim against repossession company."); *Vantu v. Echo Recovery, LLC*, 85 F. Supp. 3d 939, 944 (N.D. Ohio 2015) (noting that it was alleged that the security enforcer "had no right to present possession of the collateral" because he breached the peace and finding that "its conduct (if true) violated the FDCPA"); *Fleming-Dudley v. Legal Investigations, Inc.,* No. 05 C 4648, 2007 WL 952026, at *5–6 (N.D. Ill. Mar. 22, 2007) ("To determine whether a debt collector had a present right to possession of the property under § 1692f(6), courts in this district and elsewhere have looked to the applicable state self-help repossession statute."); *Buzzell v. Citizens Auto. Fin., Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011) ("A court should look to state law requirements to determine whether there was a present right to possession under the FDCPA . . . Under Minnesota law, a secured party may engage in self-help repossession as long as it does not breach the peace."); *Pflueger v. Auto Fin. Grp., Inc*., 1999 WL 33740813 (C.D. Cal. Apr. 26, 1999) ("Genuine issues of material fact as to whether a breach of the peace occurred during the attempted repossession of an automobile precluded summary judgment as to whether the repossessor was exercising its present right to possession, as would have precluded imposition of liability under [15 U.S.C.A. § 1692f(6)].").

## **B. Whether T4SR Committed a Breach of the Peace**

Under Alabama's repossession statute, a secured party may repossess collateral without judicial process "if it proceeds without [a] breach of the peace." Ala. Code § 7–9A–609 (1975). A "breach of the peace" is "any situation tending to disturb the public order" or "any act or conduct inciting to violence or tending to provoke or excite others to break the peace, or, as is sometimes said, it includes any violation of any law enacted to preserve peace and good order." *Madden v. Deere Credit Services, Inc.,* 598 So. 2d 860, 865 (Ala. 1992) (internal citations omitted). Westbrook argues that T4SR breached the peace because (1) Sproles trespassed onto her property to repossess the vehicle; (2) her son's verbal objections to Sproles, and to a lesser extent her own objections, created a purported risk of violence; and (3) Sproles had not allegedly hooked the car to the tow truck when she and her son confronted Sproles. Doc. 46 at 5-8. Because the trespass argument is unavailing,[4] the court examines only whether the repossession involved a risk of violence and, if necessary, whether Sproles had completed the repossession prior to the alleged breach of the peace.

---

[4] Trespass alone is insufficient to create a breach of the peace, and the parties here do not dispute that the automobile was located in an open carport. Doc. 36-6 at 7-8; 39-2 at 16; and 39-7 at 29. *See Madden v. Deere Credit Servs., Inc.*, 598 So. 2d 860, 865–67 (Ala. 1992) ("The courts of Alabama, as well as those of its sister states, have recognized that a mere trespass does not automatically constitute a breach of the peace [,] . . . [and that the] potential for breaches of the public peace and tranquility as a result of unauthorized intrusions on property escalates in direct proportion to the presence of fences, gates, signs, and other indicia of nonassent to entry."); *Callaway v. Whittenton*, 892 So. 2d 852, 858 (Ala. 2003) (holding that "§ 7–9A–609 gives a secured creditor the right to enter a debtor's land for the purpose of repossession").

9

### 1. Risk of Violence

To avoid a violation of Alabama's self-help repossession statute and breaching the peace, a creditor must repossess defaulted property "peacefully, without risk of injury to secured party, debtor, or any innocent bystanders." *Gen. Fin. Corp. v. Smith,* 505 So. 2d 1045 (Ala. 1987) (citing Ala. Code § 7–9–503 (1975)). A creditor cannot use threats or intimidation "to compel the submission of plaintiff against his will to the appropriation of what he asserts to be his property." *W. J. Speigle v. Chrysler Credit Corporation,* 323 So. 2d 360, 362-63 (Ala. Civ. App. 1975). "The threats or intimidation referred to are those which if carried out would amount to a breach of peace or if resisted would tend to promote a breach of peace" or "disturb the public order." *Id.* (internal citations omitted). Accordingly, actual "[c]onfrontation or violence is not necessary to finding a breach of the peace." *Id.*

Westbrook concedes that the T4SR employee engaged in no conduct that she can describe as breaching the peace. Her claim is based instead solely on hers and her son's response to the repossession. She cites to the dicta in *Yeldell* that Ala. Code § 7-9A-609 "does not distinguish between a breach of the peace that is caused by the debtor and a breach of peace caused by the creditor," 2011 WL 13287064, at *7, to support her contention. *Yeldell* is not binding authority. Moreover, *Yeldell* is distinguishable because, unlike Sproles, the repossession

agent actively contributed to the potential breach of the peace by positioning himself in front of the car to prevent the owner from accessing her garage, using his tow truck to block the owner from exiting her driveway, jumping into the car to gain control when the owner attempted to drive away, and forcibly snatching the keys away from the owner. *Id*. at 3-5. Westbrook has not directed the court to relevant case law in which a court has found a breach of the peace occurred based solely on the debtor's actions or verbal objections to the repossession. This distinction is critical because a review of Alabama Supreme Court cases determining whether a breach of the peace occurred rest primarily on the conduct of the repossessor or creditor rather than the debtor. *See*, *e.g., Callaway v. Whittenton,* 892 So. 2d 852, 857 (Ala. 2003) (noting that the "[repossessor] used physical force to overcome [the plaintiff's] efforts to prevent the removal of the Tracker from the front yard"); *Flanagan v. World Omni Fin. Corp*., 539 So. 2d 248, 250 (Ala. 1989) ("[A] secured party is under a *duty* to take those precautions which are necessary at the time to avoid a breach of the peace."); *Gen. Fin. Corp,* 505 So.2d at 1045 ("It is well settled, however, that upon default, a secured creditor is authorized to retake possession of the collateral by self-help, *provided he does not breach the peace*.") (emphasis added).

In contrast, nothing from the record[5] here indicates that Sproles created a risk of violence by using "actual or constructive force" to repossess the automobile. *Pleasant v. Warrick*, 590 So. 2d 214, 216 (Ala. 1991). To the contrary, Alice Westbrook testified that Sproles was "very professional," "was just there to do his job," "wasn't there to cause [her] any harm" and that she "didn't feel threatened in any way." Doc. 39-2 at 11-12. Scott Westbrook also testified that Sproles "did not curse," "did not threaten [him]," and did not possess a weapon. Doc. 39-7 at 14 (Scott Westbrook's deposition that: "Q. And your mom mentioned that he was kind of a smaller guy, so you didn't feel threatened; right? A. Yeah. No, I didn't feel threatened . . . Q. Okay. And you understand that he wasn't there to cause you any harm; right? A. Right."). As one court has found under similar facts, "these contentions do not demonstrate that any breach of the peace was caused by [the repossession]'s agent. Indeed, [plaintiff] in her deposition admits that [the] agent did not act to breach the peace," and described him as "courteous." *See McGrady v. Nissan Motor Acceptance Corp.*, 40 F. Supp. 2d 1323, 1333 (M.D. Ala. 1998).

---

[5] The court did not consider the impermissible legal conclusion Sproles made in his deposition. *See* doc. 39-6 at 12 ("When you get the law enforcement involved, that's -- to me that's Breach of the Peace."). The Eleventh Circuit and Federal Rule of Evidence 701 prohibit a "lay person [who] is not qualified to make conclusions of law." *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law.").

The Westbrooks' description of Sproles' conduct falls outside of the universe of conduct in which the Alabama Supreme Court has found a triable issue for a breach of the peace, which often involve a repossession agent using aggressive means to repossess the vehicle. *See, e.g., Callaway*, 892 So. 2d at 852 (vehicle owner testified that "the Tracker ran over his foot, that he grabbed the roll bar on the Tracker, and that [the agent] continued to drive the truck towing the Tracker, dragging [the owner] down the driveway"); *Thrash v. Credit Acceptance Corp.*, 821 So. 2d 968 (Ala. 2001) ("creditor . . . hired third party to repossess debtors' car and third party squirted liquid dish-washing soap onto debtors' driveway to make towing easier and debtor was injured when he slipped on soap, thus precluding summary judgment for creditor in negligence and trespass action brought by debtors"); *Big Three Motors, Inc. v. Rutherford,* 432 So. 2d 483 (Ala. 1983) ("Evidence, including proof that employees of automobile dealership pulled driver off road and repossessed her husband's automobile, supported finding that actions of dealership's agents amounted to breach of peace, and that therefore dealership made wrongful repossession."); *see also Wright,* 2018 WL 2095171, at *4 ("Plaintiff alleges that Ace's tow truck driver dragged his mother's Buick and sister's boyfriend's Chevrolet to gain access to the Dodge Dart, damaged the tires of these automobiles, ripped off the Buick's front bumper, and displayed a pistol to [plaintiff] so that [plaintiff] would not interfere with the repossession."). Put

simply, the Westbrooks have failed to set forth sufficient evidence for a trier of fact to determine that Sproles breached the peace.

Alternatively, even assuming that a debtor's hostile response to a courteous and professional repossession agent could create a beach of the peace, the conduct here falls short of rising to that level. Basically, the purported breach of the peace is the Westbrooks' contention about the existence of a risk of violence. To support this contention, Westbrook cites to depositions, video, and audio that captured her son's purported threatening behavior. During Westbrook's first 911 call, Scott Westbrook is overheard saying "[Sproles] has gone completely nuts . . . he's gonna crash his [inaudible] real quick . . . because they are afraid of getting shot." Doc. 39-9. Scott Westbrook also testified that he was "angry" and "felt like just punching [Sproles] in the nose." Doc. 39-7 at 11, 17. Critically, however, Scott Westbrook never acted on his heightened emotions and anger. In fact, he concedes that he never threatened to hurt Sproles and that he simply made "smart" comments to Sproles. Doc. 39-7 at 8 (Scott Westbrook's deposition that "Q. And I know you said earlier that you may have made some comments that maybe you're not proud of, but you didn't threaten to hurt him, did you? A. No. Q. When you say that you made comments, are you just talking about sort of sarcastic or smart aleck comments? A. Yes, yes."). Also, Scott Westbrook tries to downplay his reaction to Sproles, and praises Sproles for not overreacting. *Id.* at 12. (Scott Westbrook

deposition that "Q. Did you ever -- did you ever like lose it and just yell at him? A. No. Q. Or were you just being just kind of snarky? A. Yes.") and 14 ("A: . . . and in defense of [Sproles], he didn't know who he was dealing with, you know. I *could've been* some nut that *could have* just shot him dead, you know, when he walked up and didn't say, look, this is who I am . . .") (emphasis added). Lastly, the officer who responded to Westbrook's call saw no need to deescalate the situation, which belies Westbrook's contention about the situation potentially escalating into a public disturbance. *See Reno v. Gen. Motors Acceptance Corp.*, 378 So. 2d 1103, 1105 (Ala. 1979) ("Indeed, the fact that the plaintiff himself resorted to a report to the police rather than to a self-help pursuit implies the opposite of a situation tending to disturb the public order.").

To close, even viewing the evidence from the heated verbal exchange in the light most favorable to Westbrook, Sproles' undisputed professional demeanor and Scott Westbrook's downplay of his heightened emotions fail to demonstrate a triable issue regarding a breach of the peace. Therefore, because Westbrook's FDCPA claim rests solely on her contention that T4SR lost its right to possession by breaching the peace, summary judgment is due in T4SR's favor. As such, the court does not have to reach T4SR's alternative contention that it had gained

sufficient control over the collateral before the purported breach of the peace,[6] or Westbrook's argument that T4SR is not entitled to a "bona fide error" defense to a FDCPA claim.

### IV. CONCLUSION

For the reasons explained above, T4SR's motion for summary judgment, doc. 37, is due to be granted. The court will enter a separate order dismissing this case.

**DONE** the 6th day of March, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[6] *See, e.g., Callaway,* 892 So. 2d at 857 (suggesting that the dispositive inquiry is whether the repossessing agent gained sufficient control over the automobile before the breach of the peace) (citing *James v. Ford Motor Credit Co.*, 842 F. Supp. 1202, 1209 (D.Minn.1994)).